MICHELI SOLARI *vs.* ITALIAN SOCIETY OF COLUMBUS.

Suffolk.     November 21, 1911. — March 1, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Fraternal Beneficiary Corporation,* By-laws, Benefits.   *Waiver.*

A section of the constitution of a fraternal beneficiary corporation, composed of persons of Italian birth and ancestry, was as follows: "Within a year from their admission all members must be supplied with the society uniform . . . otherwise they shall lose all the rights to benefits and may be cancelled from membership." Other sections required the wearing of the uniform by those appointed as pall bearers to represent the society at the funerals of members and by all members taking part in any public parade of the society. *Held,* that it could not be said that the requirement that the members should provide themselves with uniforms was outside the general purposes for which the society was incorporated or that it was unreasonable; *also,* that it could not be said as matter of law that the penalty for non-compliance was too severe.

Under a valid by-law of a fraternal beneficiary corporation requiring that all members must be supplied with the society uniform and that "otherwise they shall lose all rights to benefits and may be cancelled from membership," where another by-law provides that "they shall be punished with suspension of the sick benefit . . . who shall not have the society's uniform," *it would seem,* that so long as a member does not have the society uniform his right to benefits is suspended without any action by the directors.   In the present case the member's right to benefits was declared lost by a vote of the directors before the injury by reason of which the benefit was claimed, and such action was not waived by another similiar vote passed after the injury.

CONTRACT against a fraternal beneficiary corporation, organized under R. L. c. 119, for $136.50 alleged to be due to the plaintiff as a benefit for sickness and disability caused by an injury sustained by him on April 16, 1905, when he was alleged to have been a member of the defendant in good and regular standing. Writ dated June 27, 1906.

The answer, among other matters, alleged that at the time of the plaintiff's injury he was not in good and regular standing in the society and that he had not conformed to the by-laws of the society.

In the Superior Court the case was submitted to *Richardson,* J., upon an agreed statement of facts. Section 18 of the defendant's constitution is quoted in the opinion, where also other provisions of the defendant's constitution are described.

The concluding portion of the agreed statement of facts was as follows:

"The plaintiff has never complied with the requirements of section 18 of the constitution and by-laws of the defendant society. While a member thereof, and prior to the injury sustained by him now subject of this suit as heretofore set forth, and after the expiration of one year from the date of the plaintiff's admission into the defendant society, the plaintiff was called before a meeting of the directors and was requested to forthwith conform with the requirements of section 18 aforesaid by getting a uniform like to the pattern which was then worn and adopted by this society, under penalty, if failing to do so, of losing his right to benefits; that the plaintiff did then and there refuse to so conform with the requirements of section 18; that at a regular meeting of the society thereafter held, but before the injury subject of this suit, and in accordance with a vote then and there taken and passed a committee was chosen to call upon the plaintiff to request him to comply with said section 18, otherwise he should forthwith lose his right to benefits as stated in said section 18, and the plaintiff did then and there refuse to receive said committee, or to hear its message; that thereafter, and some few months prior to the injury as aforesaid, the plaintiff was again summoned before the directors at a regular meeting of said directors and asked to comply with the requirements of section 18 under penalty of losing his rights to benefits; and the said plaintiff did then and there

refuse, saying, 'I will never get a uniform,' whereupon it was determined that he shall have no benefits from this society in accordance with the former vote of said defendant body; that subsequent to his injury aforesaid he appeared before a meeting of the board of directors on the matter of his claim for the time kept from profitable labor in consequence of his injury, at which meeting he was asked whether he would forthwith comply with the requirements of section 18; that he did then and there decline and did say that he would never do so, whereupon it was voted that he be not allowed any benefits from said defendant society; that said society since its incorporation and before and after the time when requests were made upon the plaintiff as ·hereinbefore set forth has adopted and has had a standard uniform."

The judge ordered judgment for the defendant, and from the judgment entered in pursuance of this order the plaintiff appealed.

The case was submitted on briefs.

*C. J. Martell,* for the plaintiff.

*S. L. Bailen & F. Leveroni,* for the defendant.

HAMMOND, J.   Section 18 of the defendant's constitution reads as follows: "Within a year from their admission all members must be supplied with the society uniform (like the existing pattern) otherwise they shall lose all the rights to benefits and may be cancelled from membership."   And the question is whether the plaintiff, having persistently refused to provide himself with the required uniform, is thereby deprived of his right to benefits.

It is contended by the plaintiff that this section is not fairly within the purposes for which the society was incorporated, and moreover that it is unreasonable.   In considering these objections it is to be noted that this is not merely an organization for the physical relief of disabled members.   It is of much wider scope. It is a society composed of people of Italian birth or ancestry, persons the greater part of whom are in a strange land but who desire to assist each other mutually in their new environment. The preamble speaks of "the purpose of promoting mutual assistance and relief, moral and intellectual education, in order to obtain the same rights and consideration which other Colonies [colonists?] enjoy, and share with them the influence which they exercise on the destiny of this country ;" and the first section of the constitution recites that the society is established "with

the purpose of promoting among members noble sentiments, mutual assistance and relief, and obtaining the moral and intellectual improvement of the associated." In a word it is a society whose members desire as strangers in a strange land to assist each other physically, morally and intellectually to obtain the advantages, either by way of citizenship or otherwise, of the land to which they have come.

And they desire to do things decently and in order. They have a love of show. The constitution requires that (§ 32) every six months twelve pall bearers shall be nominated to represent the society at the funeral of members dying in Boston, and that they shall be in full uniform when placing the "coffin in the hearse" and while marching in the funeral procession; that the uniform shall be worn (§ 80) by all members who take part in the annual "feast" of the society held in commemoration of its foundation and of the discovery of America, and (§ 83) by all members who take part in any public parade of the society. It does not appear nor is it contended by the plaintiff that this costume is of immoderate cost. It fairly may be assumed to be of moderate cost and seemly in appearance. The founders of this society evidently were convinced that whenever its representatives appeared to officiate as such at a funeral, or in a public parade, their appearance would be more impressive if all were clothed in the same uniform. Badges, insignia and uniforms within reasonable limits may tend to strengthen discipline and common ties and to impress upon the mind a greater and more realizing sense of that of which they are emblematical. The substance of show, or, in other words, the power of show, is not to be disregarded by him who desires to impress upon the members of an organization moral and religious truths. This power is seen in the effect of his country's flag upon the soldier, or of the cross upon the Christian worshipper. And even where the members alone meet, as in the case of their annual feast, uniformity of dress tends to prevent unseemly or ambitious attempts to outdo each other in attire and tends to increase the *esprit de corps*. It cannot be said that the requirement that the members should provide themselves with uniforms is outside the general purposes for which the defendant was incorporated, or that it was unreasonable. It was therefore the duty of the plaintiff to comply with the requirement.

It is however further contended by the plaintiff that, even if this be so, nevertheless the penalty for non-compliance is too great. But that position is untenable. It cannot be said as matter of law that the penalty is too severe. It follows that the section stands as a valid part of the constitution.

The agreed facts show that after repeated requests to get a uniform and repeated warnings of the consequences of a refusal, the plaintiff finally absolutely refused, "whereupon it was determined that he shall have no benefits ;" and all this before his injury. It is true that subsequent to the injury he appeared before a meeting of the directors on the matter of his claim for benefits, at which meeting he was asked whether he would forthwith comply with the requirement for the uniform, and answered that he never would do so, whereupon it was voted that he be allowed no benefits. But he had lost his right before, and this action of the directors is not to be taken as a waiver of the right to insist upon that fact.

Moreover it may well be doubted whether the right to benefits had not been lost by the very provisions of the constitution without any vote of the directors or of the society. It will be observed that in case of non-compliance § 18 distinguishes between the loss of benefits and the loss of membership. The recalcitrant member shall lose his benefits, but yet will retain his membership unless by some subsequent action he is expelled. And as if to make it more certain that a failure to get the uniform did of itself suspend the right to benefits it is provided (§ 85) that " They shall be punished with suspension of the sick benefit . . . who shall not have the society's uniform." This of itself would seem conclusive that the right to benefits even if lost under § 18 is suspended so long as the member shall not have the society's uniform although he may still remain a member of the society.

*Judgment affirmed.*